# IN THE UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF ARKANSAS
# LITTLE ROCK DIVISION

| | |
|---|---|
| IN RE:  RICHARD WALLACE DEWESE, JR. | 4:10-bk-15771 |
|   and HOLLY R. DEWESE, Debtors | CHAPTER 7 |
| | |
| STEPHEN E. MYERS | PLAINTIFFS |
| and SIOBHAN RIGNEY-MYERS | |
| | |
| v. AP NO. 4:10-ap-01204 | |
| | |
| RICHARD WALLACE DEWESE, JR. | DEFENDANT |

## MEMORANDUM OPINION

Now before the Court is the *Complaint to Determine Dischargeability* ("**Complaint**") filed by the Plaintiffs, Stephen E. Myers and Siobhan Rigney-Myers, on October 5, 2010. The Defendant, Richard W. Dewese, Jr., filed his *Answer to Complaint to Determine Dischargeability* ("**Answer**") on November 2, 2010.[1] Prior to the trial on this matter, the Court entered an *Order Denying Motion for Summary Judgment* ("**Order Denying Summary Judgment**"), and *Order Denying Jury Demand* ("**Order Denying Jury Demand**") in this case, each of which contains statements of the facts and/or law relevant to this determination. On February 15, 2012, this matter came before the Court for trial. For the reasons further explained below, the Court finds in favor of the Defendant.

---

[1] The Complaint and Answer were amended on November 10, 2010, and November 22, 2010, respectively.

**Summary of Legal Issues and Relevant Facts**[2]

In the Order Denying Summary Judgment, the Court established the two issues that were to be determined during the trial: 1) whether the Defendant was liable for a debt to the Plaintiffs for fruad, and 2) whether that debt, if owed, should be excepted from the Defendant's discharge pursuant to 11 U.S.C. § 523(a)(2)(A). That Order also made clear that a critical issue to both of those determinations was whether the Defendant intended to deceive the Plaintiffs by including charges for certain flooring materials on two specific invoices. After a trial on the merits, and following a thorough review of the evidence submitted, the Court is firmly convinced that the Defendant did not have an intent to deceive the Plaintiffs, and is not liable for fraud.

The Plaintiffs, Stephen E. Myers and Siobhan Rigney-Myers, entered into a contractual agreement with Trade Seasons, L.L.C., to perform renovations on a property they owned in Maumelle, Arkansas. The Plaintiffs did not have a contractual agreement with the Defendant, Mr. Dewese. Thus, Mr. Dewese is only liable for a debt to the Plaintiffs if he is personally liable to them for fraud. The Plaintiffs' allegations of fraud in this case are based on two invoices – Invoice No. 395 and Invoice No. 398 – that included charges for carpet, tile, and slate materials. The Plaintiffs assert that those charges were fraudulent because a provision in the contract states that Trade Seasons would only charge the Plaintiffs for completed work. Contrary to that contract provision, however, Mr. Dewese had not

---

[2] The Court incorporates the facts and law as established in the Order Denying Summary Judgment and Order Denying Jury Demand as further support for this Memorandum Opinion.

purchased the carpet, tile, and slate materials when he submitted the invoices for those materials, nor did he ever purchase the materials.[3] The Plaintiffs assert that Mr. Dewese acted fraudulently with an intent to deceive them by including the flooring materials on the invoices. Viewing the allegations with only those facts in mind, the Plaintiffs make a compelling argument. The other facts and evidence brought to light during the trial, however, make clear that Mr. Dewese had no deceptive intent.

At the time of the construction project, the Plaintiffs lived in California and oversaw the construction project from there. The Plaintiffs selected flooring materials for the project from materials available in California, but those exact flooring materials were not available in Little Rock. Because of the unavailability of the materials, Mr. Dewese attempted to match the selected materials with comparable materials in Little Rock, but that process required further approvals from the Plaintiffs. At one point, Mrs. Rigney-Myers came to Little Rock to check on the progress of the project, and to view what materials were available in the area. During her visit, Mrs. Rigney-Myers paid both of the invoices containing charges for the flooring materials. Mrs. Rigney-Myers paid one of the invoices upon arrival in Little Rock, and the other before she left a few days later. Mrs. Rigney-Myers testified that she knew Mr. Dewese had not purchased the slate and tile materials on Invoice No. 398 at the time she paid it. Additionally, the reasonable inference from Mrs. Rigney-Myers' testimony

---

[3] It is important to keep in mind that the cause of action in issue is fraud, not breach of contract. There was no contract between the Plaintiff and the Defendant, and the Court makes no determination as to whether Trade Seasons was in breach of its contract with the Plaintiffs.

3

was that at the time she paid Invoice No. 395, which contained the charges for carpet, she knew that Mr. Dewese had not yet purchased the carpet because she had not yet approved the carpet. The fact that Mrs. Rigney-Myers knew that Mr. Dewese had not purchased the materials when she paid the invoices standing alone provides a complete defense to the accusation that Mr. Dewese intended to deceive the Plaintiffs.

Additionally, Mr. Dewese's testimony makes clear that the flooring materials were included in the invoices as part of a logical, client-driven decision, and the Court finds this explanation credible. There were limited windows of opportunity in which to install the flooring materials. The first of those windows was coming to a close around the time Mrs. Rigney-Myers visited Little Rock. The evidence showed that if Mrs. Rigney-Myers had approved the flooring materials during her visit, then Mr. Dewese was going to act quickly to install the materials. Mr. Dewese included the flooring on the invoices in an effort to complete those tasks within the earlier time-frame for installation, and Mrs. Rigney-Myers knew that was the reason Mr. Dewese included the materials on the invoices. However, when the Plaintiffs did not make a final selection on the flooring materials, the window of opportunity closed. For that reason, Trade Seasons held the payments in the Plaintiffs' account to obtain the flooring materials later in the project.

The flooring materials issue provided the "fuse" for the real problem with this construction job, but the real problem resulted from Mrs. Rigney-Myers keeping information from her husband, and asking Mr. Dewese to do the same. That problem percolated into a

series of miscommunications that ultimately resulted in the termination of the construction project and this lawsuit. Although Mr. Dewese may have furthered that lack of communication by complying with Mrs. Rigney-Myers request, none of his actions were taken with an intent to deceive, and as a result, Mr. Dewese is not liable for fraud.

## **Analysis**

Generally, the owner or agent of a limited liability company is not liable for the debts of that company. Ark. Code Ann. § 4-32-304 ("[A] person who is a member, manager, agent or employee of a limited liability company is not liable for a debt, obligation, or liability of the limited liability company, whether arising in contract tort or otherwise . . . ."). However, the protections afforded to a limited liability company do not shield the owner or agent from liability for conduct that would justify a finding of fraud against that person individually. *See* 54 C.J.S. *Limited Liability Companies* § 50 ("Members or managers are not protected from personal liability for their own wrongs, such as torts . . . ."). Under Arkansas law, a cause of action for fraud requires proof of five elements:

> (1) a false representation of material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance.

*Quality Foods, Inc. v. Donckers (In re Donckers)*, Case No. 5:05-bk-75192, Adv. No. 5:05-ap-07158, slip op. at 7 (E.D. Ark. Apr. 26, 2006) (citing *Knight v. Day*, 343 Ark. 402, 405, 36 S.W.3d 300, 302-03 (Ark. 2001)).

As stated above, the critical requirement of fraud that the Plaintiffs must show in this case is that the Defendant acted with the requisite intent when he included the flooring materials on the invoices. The Plaintiffs relied on three key pieces of evidence to establish intent: (1) the invoices; (2) a statement in an email from Mr. Dewese that "we have the carpet"; and (3) a spreadsheet listing the flooring materials under the category of "actual work completed." The Court finds that the Plaintiffs have failed to establish the element of intent.

First, with regard to the invoices, the evidence shows that the parties did not strictly follow the payment provision of the contract. Instead, at least with regard to Invoice No. 395 and Invoice No. 398, the parties agreed to a different course for invoicing and payment. Mrs. Rigney-Myers was aware that Mr. Dewese had not purchased the flooring materials at the time she paid the invoices. She specifically acknowledged this in her testimony. Mrs. Rigney-Myers testified that she knew that Mr. Dewese had not purchased the slate and tile materials on Invoice No. 398 at the time she paid that invoice. Additionally, it was clear from her testimony that Mrs. Rigney-Myers knew Mr. Dewese had not purchased the carpet at the time she paid Invoice No. 395 because she knew that he had not located, and the Plaintiffs had not approved, a suitable match for the carpet they had picked out in California. Mr. Dewese testified that he was still trying to find a way to satisfy the Plaintiffs' demands for the specific carpet at the time Mrs. Rigney-Myers paid the invoice. Further, by her own testimony, Mrs. Rigney-Myers was in Little Rock when she hand-delivered the check for

6

Invoice No. 395 for the specific purpose of checking on the progress of the project, and the Court does not accept Mrs. Rigney-Myers' testimony that she thought Mr. Dewese had already purchased the carpet. Thus, the Court does not accept the inclusion of the materials on the invoices as evidence that Mr. Dewese intended to deceive the Plaintiffs. Mr. Dewese intended that the Plaintiffs pay the charges on the invoice, but he also intended to locate, purchase, and install the flooring materials. Mr. Dewese's intent was focused on keeping the construction project on schedule and getting the flooring materials installed within a specific window of opportunity, not to fraudulently deceive the Plaintiffs into making the payments.

Evidence provided during the hearing of a severe lack of communication between the parties furthers this conclusion. There were some communication problems between the Plaintiffs and the Defendant, but the more glaring communication problem was between the two individual Plaintiffs. Mrs. Rigney-Myers told Mr. Dewese and Trade Seasons one thing, while withholding that information from Mr. Myers, and asking that Mr. Dewese and Trade Seasons do the same. For instance, an email submitted to the Court shows that Mrs. Rigney-Myers requested that Trade Seasons conceal certain aspects of the renovation project from her husband. At trial, the Defendant testified that many of the conflicts were brought about by his efforts to abide by Mrs. Rigney-Myers' requests. The Court found the Defendant's testimony entirely credible, and that it provided a logical explanation that tied all of the exhibits and evidence into one reasonable believable narrative. Additionally, the Court believed Mrs. Rigney-Myers encouraged Mr. Dewese to participate in her strategy, which can

be accurately described as a desire to have information parsed out to Mr. Myers in increments to prevent him from reacting negatively to her decisions regarding the renovation project. While these issues may have resulted in some confusion between Trade Seasons and Mr. Myers, they are not evidence that Mr. Dewese intended to deceive the Plaintiffs.

Further, the Court found particularly convincing the testimony regarding the schedule for completion of the project. There were complications in obtaining particular materials that the Plaintiffs wanted in the house, and further approval by the Plaintiffs was required before the carpet, tile, and slate materials could be installed. It became clear from the testimony that Mr. Dewese, on behalf of Trade Seasons, was working hard to ensure that the flooring was completed within a certain window of time, so as to keep the project moving and in line with the budget for the renovations. It was Mr. Dewese's efforts toward that end (toward fulfilling the Plaintiffs' demands) that motivated the billing of the carpet, slate, and tile materials. After Mrs. Rigney-Myers had already paid the invoices, it became evident that the flooring tasks could not be completed in the desired time-frame. Thus, Trade Seasons held the funds for purchase of the materials at the time of the actual installation, and acknowledged that the Plaintiffs had paid for those materials in all representations concerning the materials from that point forward.

Finally, the Plaintiffs relied on several additional pieces of evidence to support their assertions that Mr. Dewese intended to deceive them through the representations in the invoices. The Plaintiffs relied heavily on an email to the Plaintiffs from Mr. Dewese that

8

states "we have the carpet ready to put in." The Plaintiffs assert that this email shows that Mr. Dewese had intended to deceive them all along. In other words, the Plaintiffs assert that Mr. Dewese must have intended to deceive them with the representations in the invoices because he continued to assert that he had the carpet. However, to make this argument, the Plaintiffs lift this one sentence out of the context of the email, and out of the context of the circumstances surrounding it. The remainder of the email reads: "I want to overnite a sample to you just to make sure it is correct, since I have never seen it. If it is OK, then we'll lay it. I would hate to lay carpet and it be wrong . . . ." If Mr. Dewese intended to deceive the Plaintiffs into thinking he had already purchased the carpet, it is unlikely that he would tell them in the next sentence that he had never seen the carpet. The statements in this email, when read as a whole, only make sense when viewed in light of the surrounding circumstances. The Court believes Mr. Dewese's testimony that the purpose of his statement was to acknowledge that the Plaintiffs had fully paid for the carpet, that all arrangements were made to have the carpet delivered and installed, and that the only remaining hurdle was the Plaintiffs' approval. Similarly, the Plaintiffs relied on a statement in a spreadsheet that listed the carpet, tile, and slate under a column labeled actual work completed. Mr. Dewese testified that those items were in that category only because the Plaintiffs had already paid for the materials. The purpose of the spreadsheet was to let the Plaintiffs know how the project costs were accumulating, in comparison to the original plans for the project. Thus, it made sense for Mr. Dewese to include the cost of the materials in the "actual work

9

completed" category because Trade Seasons already had the money for those materials. The spreadsheet is evidence that Trade Seasons had appropriately credited the Plaintiffs' payments for the materials to the account. Based on the evidence, the Court finds that the statements in the email and the spreadsheet do not support a conclusion that Mr. Dewese included the charges for the materials on the invoices with an intent to deceive the Plaintiffs.

Therefore, the Court finds that Mr. Dewese did not intend to deceive the Plaintiffs by including the carpet, tile, and slate materials in the invoices, and as a result, the Plaintiffs have failed to prove that the Defendant is personally liable to them for fraud. Because the Court finds that the Defendant did not intend to deceive the Plaintiffs, even if liability could be established, the debt would not be excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

**IT IS SO ORDERED.**

Audrey R. Evans
United States Bankruptcy Judge
Dated: 02/22/2012

cc:    Ashlea M. Brown, Attorney for Plaintiff
       Kevin P. Keech, Attorney for Defendant
       James F. Dowden, Chapter 7 Trustee
       U.S. Trustee